JACOBSON *v*. CHERTOK.

PARTNERSHIP—ACCOUNTING—PARTNERSHIP BUSINESS—EVIDENCE.
> In a suit for an accounting in a partnership formed to
> operate a general life insurance agency, the issue being
> as to whether the profits from certain policies issued to
> a business firm belonged to the partnership, where, al-
> though the medical examinations were held before it was
> dissolved, the applications were not made and the policies
> not issued until after, evidence *held*, to show that said
> insurance was not partnership business.

Appeal from Wayne; Hart (Burton L.), J., presid--
ing. Submitted January 24, 1923. (Docket No. 49.)
Decided March 22, 1923.

Bill by Benjamin Jacobson against Maurice L.
Chertok and another for a partnership accounting.
From a decree for plaintiff, defendant Chertok appeals.
Affirmed.

*Friedman & Meyers,* for plaintiff.

*William Henry Gallagher,* for appellant.

McDONALD, J. The purpose of this bill is to secure
an accounting in a partnership business. On the 16th
of August, 1918, the Minnesota Mutual Life Insurance
Company of St. Paul entered into a contract with
defendant Maurice L. Chertok of the city of Detroit,
whereby Chertok was to represent the company with-
in certain territory, which included the city of De-
troit. On the 31st of August, 1918, the plaintiff and
defendant Chertok formed a partnership to operate
a general agency in the underwriting of life insurance
policies. In the partnership agreement, it was pro-

vided that the plaintiff "shall not be entitled to participate in any renewal commissions earned under this agreement or any policy unless he shall have been a partner for at least one year from the date such policy was written."

The parties continued in business together until the latter part of May, 1919.    On May 1, 1919, the Minnesota Mutual Life Insurance Company canceled its agency contract with Chertok to become effective in 30 days.    At the expiration of that time the company appointed plaintiff its agent.    Late in March or April, 1919, the plaintiff solicited the four Cronin brothers, then engaged together in the coal business, to take insurance with the Minnesota company.    Their medical examination was had on April 4th and April 5, 1919, but the applications were not signed until June 16, 1919, and the policies were not issued until June 23d.    The plaintiff claims that this insurance did not belong to the partnership business.    The defendant claims that it was actually obtained before the expiration of this agency, but was wrongfully withheld until after the partnership was dissolved.

On the hearing the circuit judge found that the Cronin insurance was not partnership business, and, therefore, defendant Chertok had no interest in it. The decree entered denied the plaintiff's interest in renewal commissions, denied the defendant renewal commission in policies issued on the life of plaintiff, and ordered an accounting.    The defendant Chertok is here on appeal asking for a modification of that part of the decree which denies his interest in the Cronin insurance.

As the case is presented by the record it seems to depend on a simple question of fact as to whether applications for insurance were signed by the Cronins at the time they took their medical examinations on April 4th and 5th, and withheld by plaintiff.    The

plaintiff and the two Cronins, who were sworn as witnesses, say that no applications were signed until June 16th, after the copartnership was dissolved. The defendant and Mr. Goodman, who prepared his case for trial, testified that they saw applications dated April 4th and 5th in plaintiff's possession. In explaining why the medical examinations were taken in April and the applications not made until June, Arthur D. Cronin testified as follows:

"*Q.* Now, why—have you any explanation to make for the lapse of time between the medical application and the date of signing the application?

"*A.* Why, I was stalling; we had considerable coal on hand, and I didn't take the insurance from him until I knew he would continue buying coal. That was the only reason.

"I made the agreement with him when the policy was issued in June. He was to buy a certain amount of coal. I told him that in June. I made that arrangement in June because we had considerable coal on hand. We were converting it into cash, and figuring the premium was worth so much, the insurance was worth so much. We decided, perhaps sometime in May. I am not sure when I decided I would take it. I talked it over with Fred.

"Jacobson came in the following day. Prior to that I was stalling along with him to induce him to buy coal. We were figuring on insurance, too, with Sam Frank. He was also buying coal. The one that bought the most coal was the one that got the policy."

This testimony furnishes a reasonable explanation of the one circumstance indicating that plaintiff had withheld the Cronin insurance until the partnership was dissolved. It is impossible to harmonize the testimony of the other parties, but we see no reason for discrediting that of the Cronins. They were disinterested witnesses. They were in no way impeached. Their testimony causes a preponderance of the evidence in plaintiff's favor. Conceding to that testimony the credit to which we think it is entitled,

and having in mind the presumption in favor of the conclusions of a trial judge on questions of fact, we are constrained to hold that the Cronin insurance was not a part of the partnership business.

The decree will be affirmed.    Plaintiff will have costs in this court.

WIEST, C. J., and FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.